IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In re:

RAY ARTIS RUSSELL,                               Case No. 19-11514

    *Debtor.*

## MEMORANDUM OPINION AND ORDER

This matter came before the Court on the Motion for Relief from the Automatic Stay (hereinafter "the Motion") filed by Carrington Mortgage Services, LLC (hereinafter "Carrington") pursuant to 11 U.S.C. §362. Proper notice of hearing was given and appearances were noted by Attorney Kent McPhail on behalf of Carrington and Attorney Alexander Almond, on behalf of the Debtor. Having considered the record, the motion, the brief and the arguments of the parties, the Court finds that the Motion is due to be and is hereby GRANTED for the following reasons:

## JURISDICTION

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1334 and 157, and the order of reference of the District Court dated August 25, 2015. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G).

## FINDINGS OF FACT

The parties submitted a Joint Stipulation of Undisputed Facts with Exhibits, (hereinafter "Stipulation") which the Court adopts and the summation of which is set out herein. (Doc. 41). On August 9, 2010, the Debtor executed and delivered a mortgage and promissory note wherein he promised to make mortgage payments totaling $74,003.00 payable in 360 consecutive

installments. (*Id*. at ¶1, Ex. A, B). To secure all payments under the promissory note, Debtor granted a security interest in real property commonly referred to as: 3104 First Avenue, Mobile, AL 36617 and all appurtenances therein and thereto (hereinafter "Property"). (*Id.* at ¶2, Ex. C). Carrington had a perfected security interest in the Property. (*Id.* at ¶3). The Debtor subsequently defaulted on his mortgage obligation and Carrington initiated foreclosure proceedings against the Property. *(Id.* at ¶4). On March 7, 2019, notice of foreclosure was sent to the Debtor. (*Id.* at ¶6, Ex. E). The notice of foreclosure was published in *The Call News,* a newspaper of general circulation published in Mobile County Alabama, on March 13, 2019, March 20, 2019, and March 27, 2019. (*Id.* at ¶7, Ex. F). On May 3, 2019, at 11:00 a.m., during the legal hours of sale, pursuant to the power of sale provisions included in the mortgage, the Property was sold by public auction on the courthouse steps in Mobile, Alabama. (*Id.* at ¶8). At the end of the foreclosure auction, often referred to as "the fall of the gavel", Carrington Mortgage Services, LLC was the high bidder in the amount of $61,180.00. (*Id.* at ¶9, Ex. F).

      Post-foreclosure, on May 7, 2019, Carrington sent a written demand to Debtor to vacate the Property. *(Id.* at ¶10, Ex. G). On May 7, 2019, Debtor filed this chapter 13 bankruptcy case. (*Id.* at ¶11, Ex. H). Debtor listed the Property as his address of residence on the petition and on schedule A wherein Debtor stated he was the only owner of the Property having a fee simple ownership interest. *(Id.* at ¶12). The Debtor claimed the Property as exempt on schedule C under the homestead exemption. (*Id.* at ¶12, Ex. I). On May 8, 2019, the foreclosure deed was executed by the auctioneer who conducted the foreclosure sale. (*Id.* at ¶13). On May 15, 2019, the foreclosure deed was recorded as instrument number 2019026625 in the Probate Court of Mobile County. (*Id.* at ¶16). On July 24, 2019, Carrington filed a motion for relief from the automatic stay of 11 USC § 362 to proceed with the post-foreclosure ejectment and all acts necessary to

enforce its interest in the Property. *(Id.* at ¶17, Ex. K). At the hearing of this matter, there was no dispute as to the validity of the foreclosure. The parties stipulated that the foreclosure sale was properly conducted in accordance with Alabama law, including all necessary notices and publication and that the foreclosure sale was valid. *(Id.* at ¶16). No other pertinent facts are in dispute and this matter is ripe for adjudication by this Court based upon the pleadings filed and the Stipulation.

## CONCLUSIONS OF LAW

The issue presented is whether the "gavel rule", establishing that a mortgagor lacks the ability to cure a mortgage default upon the fall of the gavel at a duly conducted, pre-petition foreclosure sale, remains the appropriate standard for determining a chapter 13 debtor's interest in foreclosed property. Property of the bankruptcy estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a). The filing of a bankruptcy petition creates a stay applicable to all entities of any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. 11 U.S.C §362 (a)(3). Most courts agree that the foreclosure of a debtor's principal residence in accordance with state law, prior to the filing of a bankruptcy petition, excludes the foreclosed property from the bankruptcy estate. *See Commercial Fed. Mortgage Corp. v. Smith* (*In re Smith)*, 85 F. 3d 1555 (11th Cir. 1996); *Federal Land Bank v. Glenn (In re Glenn),* 760 F.2d 1428, 1435 (6th Cir.); In re Cain, 423 F3d 617, 619–620 (6th Cir. 2005); *McCarn v. WYHY Fed. Credit Union (In re McCarn)*, 218 BR 154 (BAP 10th Cir. 1998); *In re Crawford*, 232 BR 92, 95 (Bankr. ND Ohio 1999) ); *In re Connors*, 497 F3d 314, 321, 322 (3d Cir. 2007).

# Alabama Foreclosure Law

The starting point in determining a mortgagor's status vis-à-vis a foreclosed mortgage is state law. *In re McKinney*, 174 B.R. 330, 333. Alabama is a power of sale foreclosure state. *Ala. Code* §35-10-12 (1975). Alabama mortgagees hold legal title to the real property subject to the mortgagor's equitable right of redemption and title is not revested in the mortgagor until payment of the debt. *Ala. Code* §35–10–26 (1975). A power of sale foreclosure consists of notice of sale in the manner prescribed in the mortgage instrument or as allowed by statute and a public sale by auction at a specified time and place. Ala Code §§ 35-10-2; 35-10-8; 35-10-13 (1975). Alabama Code §6-5-248 (1975) provides mortgagors a post foreclosure statutory right of redemption, stating in pertinent part:

> (a) Where real estate, or any interest therein, is sold, it may be redeemed by:
>
> (1) Any debtor, including any surety or guarantor.
>
> (2) Any mortgagor, even if the mortgagor is not personally liable for payment of a debt…
> (b) All persons named or enumerated in subdivisions (a)(1) through (a)(7) may exercise the right of redemption granted by this article within 180 days from the date of the sale for residential property on which a homestead exemption was claimed in the tax year during which the sale occurred, or within one year from the date of the sale for all other property.

A purchaser at foreclosure sale holds legal title to the property, subject to the mortgagor's statutory right of redemption. *Id.* A mortgagor's statutory redemption period runs from the date of the foreclosure sale. *Garrison v. Dickerson*, 631 So 2d 255 (Ala. Civ. App. 1993). Debtors failing to deliver possession of foreclosed property to purchaser upon a 10 day written demand forfeit their statutory right of redemption. Ala. Code §6-5-251 (1975).

## Pre-1994 Difference of Opinions

Bankruptcy courts faced with determining the point in the pre-petition foreclosure process at which a mortgagor's interest in a principal residence terminates, thereby placing the property outside a chapter 13 bankruptcy estate and without protection of the automatic stay, previously reached differing conclusions. *See In re Ragsdale,* 155 B.R. 578 (Bankr. N.D. Ala.1993) (providing a synopsis of differing opinions throughout the circuit courts at that time). Most courts recognized the analysis involves the interplay of state law and Section 1322 of the Bankruptcy Code. 11 U.S.C. §1322 provides the framework for inclusion of debts in a Chapter 13 plan and states in pertinent part:

> (b) Subject to subsections (a) and (c) of this section, the plan may…
>
> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;
> (3) provide for the curing or waiving of any default;
> (4) provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim;
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

Due to differences of state law, bankruptcy court determinations concerning when in the pre-petition foreclosure process a mortgagor's interest in property was sufficiently terminated to place it outside the bankruptcy estate ran the gamut of outcomes from pre-foreclosure sale acceleration to post-foreclosure redemption. *See generally In re Roach,* 824 F.2d 1370 (3d Cir.1987) (cannot cure after foreclosure judgment); *In re Glenn,* 760 F.2d 1428 (6th Cir. 1985) (cannot cure after foreclosure sale); *In re Thompson,* 894 F.2d 1227 (10th Cir.1990) (cure allowed before foreclosure sale; however, the court indicates in dictum that the right to cure

should extend to the end of a statutory redemption period); *In re Klapp,* 80 B.R. 540 (Bankr.W.D.Okla.1987) (may cure if petition is filed after judicial sale has been held but not confirmed); *In re Chitwood,* 54 B.R. 396 (Bankr.W.D.Va.1985) (cure may occur if foreclosure deed has not been delivered to purchaser); *In re Rutterbush,* 34 B.R. 101 (E.D.Mich.1982) (cannot cure after acceleration); *In re Tucker,* 131 B.R. 245 (Bankr.D.Me.1991) (debtor may cure default until the expiration of a period of redemption). Alabama bankruptcy courts were not immune from the discord on this topic. *See In re Ragsdale,* 155 B.R. 578 (Bankr.N.D.Ala.1993); *In re McKinney,* 174 B.R. 330 (Bankr.S.D. Ala.1994). The *In re Ragsdale* decision cast a wide net and allowed inclusion of property post foreclosure sale in the bankruptcy estate. *In re Ragsdale* at *585*. In contrast, *In re McKinney* instituted a bright line approach holding a debtor's right to cure a mortgage default was cut-off upon a foreclosure sale. *In re McKinney* at 335.

The court in *In re Ragsdale* reasoned that cases holding cure is not allowed after a foreclosure sale essentially modify the plain language of 11 U.S.C. §1322(b)(5) to make it read that a chapter 13 plan may provide for the curing of any default *unless a foreclosure has taken place*. The court indicated it was not willing to impute that language to the statute and that under §1322(b)(3) cure is available until a debtor is completely divested of all rights in the property. *In re Ragsdale* at 586. The *Ragsdale* court deemed the foreclosure sale date as an arbitrary cut-off date and instead reasoned that a sale should not be considered completed until it is not subject to any contingency. *Id.* at 587. In accordance with such analysis, the court held that a debtor does not become completely divested of all rights and lose the ability to cure the default under 11 U.S.C. §1322 (b)(3) until after the statutory redemption period expires post foreclosure sale.

The subsequent *In re McKinney* opinion contradicted *In re Ragsdale* and held that a debtor's right to cure mortgage default terminates on the date of the foreclosure sale. 74 B.R.

330, 333 (Bankr. S.D. Ala 1994). *In re McKinney* recognized that the Alabama redemption statute focuses on the word "sale" in providing a redemption may be exercised within the specified time period "from the date of sale". *Id.* at 334; Ala. Code §6-5-248 (1975). The court further noted the Alabama statutory definition of the term "sale" as "any execution, judgment, or foreclosure sale, whether the sale is made under any power of sale in any mortgage or deed of trust or statutory power of sale, or by virtue of any judgment, in any court of competent jurisdiction." Ala. Code§6–5–247(1)(1975). Hence, the *In re McKinney* decision explained that upon a foreclosure *sale*, a mortgagor's equitable right of redemption ends. *Id.* at 334 (citing *FDIC v. Morrison,* 747 F.2d 610, 613 (11th Cir.1984). The court also stated that foreclosure of a mortgage extinguishes the debt by the amount of the purchase price if that amount is less than the debt, or extinguishes the entire debt if the purchase price is more than that amount, and further, after the foreclosure, there is a merger of legal and equitable titles. *Id.* at 334.

The court in *In re Mckinney* construed its analysis to comport with 11 U.S.C. §1322 and explained as follows:

> Section 1322(b)(2) provides that Chapter 13 debtors may "modify the rights of holders of secured claims" except the claims of mortgagees that hold homestead mortgages. However, under Section 1322(b)(5), debtors are allowed to modify secured claims secured by homesteads in a limited manner. Section 1322(b)(5) states that debtors may "provide for the curing of any default ... and maintenance of payments while the case is pending on any unsecured or secured claim on which the last payment is due after the date on which the final payment under the plan is due." Section 1322(b)(3) allows plans to "provide for the curing or waiving of any default." Based upon the discussion of Alabama foreclosure law above, this court concludes that after a foreclosure sale occurs, there is no "unsecured or secured claim on which the last payment is due after the date on which the final payment under the plan is due." There is also no "default" to cure or waive. Therefore, there is no ability to cure and maintain mortgage payments under 11 U.S.C. § 1322(b)(3) or (5).

*Id.* at 334, 335.

*In re McKinney* has been cited for the proposition that the fall of the gavel at the foreclosure *sale* is the determining factor in the assessment of a debtor's interest in mortgaged property; such premise is commonly referred to as the "gavel rule." Courts following the gavel rule hold that the right of the debtor to cure a mortgage default in bankruptcy terminates at the time the gavel falls at a foreclosure sale conducted in accordance with applicable non-bankruptcy law. Title to foreclosed property passes to the purchaser at the foreclosure sale and the debtor has no right thereafter to cure arrears or reinstate the mortgage through their Chapter 13 bankruptcy plan. *Id.* at 338.

## Codification of the Gavel Rule

Post *In re McKinney*, the language of 11 U.S.C. §1322, was amended by Section 301 of the Bankruptcy Reform Act of 1994, P.L. No. 103–394, 108 Stat. 4106 (the "Reform Act"), which in effect, codified the gavel rule. In essence, Congress supplanted state property rights with a national standard. *In Re. Sims*, 185 B.R. 853 (Bank. N.D. Ala. 1995). Specifically, the 1994 amendment to 11 U.S.C. §1322 added (c)(1), which has remained the same upon subsequent amendments to the Bankruptcy Code, and states in pertinent part, **"** …a default with respect to or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law."

In accordance with rules of statutory construction, in order to give meaning to Section 1322(c)(1) of the Bankruptcy Code, the court must begin with the language of the statute itself. *In re: Sims*, 185 B.R. 853 (Bankr N.D. Ala. 1995.) If the statutory scheme is "coherent and consistent, there is no need for a court to inquire beyond the plain language of the statute." *Id.* at 863, 864 citing, *United States v. Ron Pair,* 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1030, 103

L.Ed.2d 290 (1989), *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992) (The court must give effect to the clear meaning of the statute as written); *Connecticut National Bank v. Germain,* 503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (When the words of a statute are unambiguous, the first canon of construction—that the court must presume that the legislature says what it means in the statute—also becomes the last canon of construction; judicial inquiry at that point is complete.); *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917) ( "[T]he meaning of a statute must, in the first instance be sought in the language in which the act is framed and if that is plain, ... the sole function of the courts is to enforce it according to its terms.").

Interpreting the plain language §1322(c)(1), most courts have concluded that the statutory language is not ambiguous and found that the debtor's right to cure expires when the foreclosure auction is concluded regardless of whether deed delivery or confirmation is subsequently required. *See, e.g., In re Connors,* 497 F.3d 314, 319–21 (3d Cir.2007); *Cain v. Wells Fargo Bank, N.A. (In re Cain),* 423 F.3d 617, 620–21 (6th Cir.2005); *TD Bank, N.A. v. LaPointe (In re LaPointe),* 505 B.R. 589, 597 (1st Cir. BAP 2014) ; *McCarn,* 218 B.R. at 160–62; *In re Bobo,* 246 B.R. 453, 456–59 (Bankr.D.C.2000); *see also Commercial Fed. Mortg. Corp. v. Smith (In re Smith),* 85 F.3d 1555, 1558 n. 3 (11th Cir.1996). The plain language of 11 U.S.C. §1322 is consistent with the ruling of *In re McKinney* that the Debtor's ability to include property as part of the bankruptcy estate and therefore cure a mortgage default expires at the completion of a sale conducted in accordance with applicable non-bankruptcy law. 174 B.R. 330 (Bankr.S.D. Ala.1994).

This Court agrees with the above cited authorities that statutory language should be construed in accordance with its plain meaning, the language of §1322(c)(1) is not ambiguous

and the term "sale" means exactly that, the foreclosure sale, which in Alabama is the foreclosure auction. Hence, this Court finds sufficient substantiation for the conclusion that when the gavel falls at a foreclosure sale conducted in accordance with Alabama law, the foreclosed property is excluded from a subsequently filed chapter 13 bankruptcy estate of the mortgagor.

### *Ex parte GMAC Mortgage*

Notwithstanding the forgoing, this Court is aware of the recent decision of the Alabama Supreme Court in the matter of *Ex parte GMAC Mortgage, LLC,* 176 So.3d 845 (2013), and must consider what impact, if any, such ruling has on the gavel rule a codified by 11 U.S.C. §1322. The sole issue before the court in *Ex parte GMAC* was not the debtor's right to reinstate or place foreclosed property in a chapter 13 bankruptcy but simply the creditor's standing to foreclose. In *Ex parte GMAC,* the mortgagor challenged standing to foreclose when the mortgagee did not obtain an assignment of the mortgage until the day prior to the foreclosure auction. The Alabama Supreme Court held that the validity of a foreclosure turns not on whether the foreclosing party holds the mortgage and power of sale at the time of the initiation of the foreclosure process but on whether it holds the mortgage and power of sale at the time the foreclosure deed is executed.

The Alabama Supreme Court reasoned that the foreclosure power of sale is exercised by the act of selling, not merely running a newspaper advertisement preparatory of selling. *Id.* at 850. In determining that the Creditor need not hold an assignment of the mortgage at the time of initiation of the foreclosure, which in Alabama is notice and publication, the *Ex parte GMAC* court included language in the opinion stating, in part "… that it is the act of executing and delivering the deed that completes the foreclosure." *Id.* at 850. The opinion also referenced *Lewis v. Wells*, 50 Ala. 198, 206 (1874), explaining that the alienation or transfer of property as

part of a foreclosure sale is complete on the execution of the conveyance in the proper manner and recognized the right of the parties to "go on" and complete the title by a proper conveyance. *Id.*at 850. The court even cited *In re McKinney* for its holding that foreclosure marks the end of the mortgagor's equitable right of redemption. Id. at 852 n.2. *Ex parte GMAC* overturned the decision of the Alabama Court of Civil Appeals as well as another Court of Civil Appeals decision, *Sturdivant v. BAC Home Loans Servicing, LP,* 159 So.3d 15 (Ala.Civ.App.2011), which previously considered the same issue and had held that a mortgagee must possess an assignment of the mortgage at the initiation of the foreclosure process. In doing so, the *Ex parte GMAC* court concluded that so long as a creditor possesses an assignment of the mortgage at the time the foreclosure deed is executed, the foreclosure sale is not void for lack of standing. *Id.*at 851.

This Court does not find the facts of *Ex parte GMAC* sufficiently on point to construe statements therein regarding the effect of deed delivery germane to the matter before it. Nor does *Ex parte GMAC* justify departure from the gavel rule. The *Ex parte GMAC* court was not asked to delineate a debtor's interest in property in the context of a chapter 13 bankruptcy filing. It only addressed the creditor's standing to determine the validity of the foreclosure. The *Ex parte GMAC* court's explanation that a foreclosure does not take place upon commencement of the foreclosure but upon the sale, as well its statements recognizing the right of the parties to "go on" and complete the title by conveyance evidence that the Alabama Supreme Court did not intend to abrogate the gavel rule. The *Ex parte GMAC* opinion did not articulate any apparent intent to repudiate existing bankruptcy law. Such lack of intent can further be deduced from the fact that the *Ex parte GMAC* opinion cited *In re McKinney* as an authority and did not question or challenge its holding.

In light of the narrow issue of *Ex parte GMAC*, this Court does not believe it was the intent of the Alabama Supreme Court to abolish the gavel rule in the context of a bankruptcy proceeding or attempt to abrogate the statutory language of §1322(c)(1). It is not incumbent upon this Court to afford any broader applicability to the *Ex parte GMAC* decision than it believes the Alabama Supreme Court intended. Hence, this Court finds it appropriate to limit applicability of *Ex parte GMAC* solely to the determination of standing to foreclose; to do otherwise could potentially lead to unintended and erroneous results. In the instant case, there is no contest of the foreclosure and no allegation of lack of standing of the creditor. The parties stipulated that the foreclosure sale was properly conducted in accordance with Alabama law, including all necessary notices and publication and that the foreclosure sale was valid. *(Doc 41* at ¶16). The issues raised in the instant case are separate and distinct from the issues raised in *GMAC*. As such, this Court does not view the holding in *Ex parte GMAC* to constitute an attack on the gavel rule and does not find the statements therein to be instructive or binding upon this Court's analysis of the issue presently before it.

### State vs. Federal Law

In the event that one may be tempted to infer a conflict between the state law of *Ex parte GMAC* and the federal law of 11 U.S.C. §1322, it is undisputed that federal law controls. Although it is true that foreclosure processes are governed by state law, Congress has the power to modify and affect the property rights established under state law in bankruptcy. *Jim Walter Homes, Inc. v. Spears (In re Thompson),* 894 F.2d 1227, 1230 & 1231 (10th Cir.1990) (interpretation of section 1322 is a question of federal law). A determination that a debtor's ability to cure a mortgage default under section 1322(b) is terminated under section 1322(c)(1) at the close of a foreclosure sale is in accord with the policy of establishing a uniform set of laws

governing consumer bankruptcy. *See, e.g., Grubbs v. Houston First Am. Sav. Ass'n,* 730 F.2d 236, 241 n. 9 (5th Cir.1984), *quoted in Ziyambe,* 200 B.R. at 798; *see also Wright v. Union Ins. Co.,* 304 U.S. 502, 517, 58 S.Ct. 1025, 1033–34, 82 L.Ed. 1490 (1938) ( (Baldock, J., concurring) (pre-section 1322(c)(1) case recognizing that Art. I, § 8 of the Constitution empowers Congress to establish uniform bankruptcy laws, and this "provision undoubtedly authorizes Congress to promulgate a federal statute delineating a time limitation on the right to cure a defaulted residential mortgage under § 1322(b)"). Article VI of the United States Constitution "requires state law to give way if it frustrates the implementation of a federal statutory scheme." *In re Schnupp,* 64 B.R. 763, 768 (Bankr.N.D.Ill.1986).

## Public Policy Supports the Gavel Rule

In addition to the favorable state law authorities and copious interpretations of 11 U.S.C. §1322 supporting the gavel rule, application of such principle is warranted as a matter of public policy. The common denominator of the varying state foreclosure processes is the foreclosure sale itself, the date and time of which is easily identifiable without making inquiry into any other event or process. This Court believes that reliance on the fall of the gavel as the bright line cutoff for determining a debtor's ability to include property in a subsequently filed bankruptcy estate fosters predictability and uniformity and accordingly is the logical choice. Conversely, allowing debtors to include property previously sold to another at a public auction would not only have a chilling effect on foreclosure sales and mortgage availability, but would also lead to continued uncertainty and unnecessary confusion as to exactly when a debtor's ability to cure in bankruptcy ceases. It is not prudent or practical for the bankruptcy courts to constantly evaluate differing fact scenarios likely giving rise to further variation of opinions and undermining clear, uniform application of the Bankruptcy Code. The more rational approach is to assess the fall of

the gavel as the dispositive date for the analysis of a chapter 13 debtor's interest. Such policy is consistent with this Court's interpretation of Alabama law and the plain language of 11 U.S.C.§1322.

## **CONCLUSION**

This Court hereby finds that the gavel rule as codified by 11 U.S.C. §1322(c)(1), remains the appropriate standard to evaluate a chapter 13 debtor's interest in property subject to foreclosure. Alabama law supports the gavel rule, the facts of this case are distinguishable from *Ex parte GMAC*, the plain, unambiguous language of 11 U.S.C. §1322 (c)(1) controls and public policy favors the conclusion that the fall of the gavel at a duly held foreclosure sale conducted in accordance with Alabama law is the point at which a debtor's ability to include foreclosed property in a subsequently filed chapter 13 bankruptcy terminates.

Accordingly, this Court hereby finds that the foreclosed Property is not part of the Debtor's bankruptcy estate. There is no dispute that the foreclosure sale was conducted on May 3, 2019 and the bankruptcy petition was not filed until May 7, 2019. Therefore, it is hereby ORDERED, ADJUDGED and DECREED that the automatic stay of 11 U. S. C. §362 is not applicable to the foreclosed Property.

Dated: October 11, 2019

JERRY C. OLDSHUE, JR.
U.S. BANKRUPTCY JUDGE